IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| FREIDA POLLANDER, | ) Civil Action No. 4:09-02508-JFA-TER |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **REPORT AND RECOMMENDATION** |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

This is an action brought pursuant to §§ 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying plaintiff's claims for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

## I. PROCEDURAL HISTORY

Plaintiff, Frieda Pollander, protectively filed applications for DIB and SSI on June 1, 2005, with an alleged onset of disability of March 24, 2004. Plaintiff requested a hearing before an administrative law judge (ALJ) after her claims were denied initially and on reconsideration.

After plaintiff's hearing (Tr. 27-73), the ALJ issued a decision dated September 26, 2008, (Tr. 17-26) finding plaintiff not disabled because she retained the residual functional capacity to perform less than a full range of sedentary work. (Tr. 23). After the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 5-7), the ALJ's decision became the Commissioner's final decision for purposes of judicial review under 42 U.S.C. § 405(g). See 20 C.F.R. §§ 404.981, 416.1481. Plaintiff filed the instant action on September 25, 2009.

## II. FACTUAL BACKGROUND

Plaintiff was born on January 27, 1964, and was forty (40) years of age at the time of the hearing. (Tr. 24, 118). The ALJ found that she has a limited education and past relevant work as a packer, as a shaper and presser, as a loom blower, as a helper for spinners, as a delivery truck driver, and as an inspector and hand packager. (Tr. 64-65). Plaintiff alleged disability due to dysthymia, anxiety-related disorder, somatoform disorder, personality disorder, obesity, cervical and lumbar degenerative disc disease, degenerative joint disease, and osteoarthritis.

## III. DISABILITY ANALYSIS

In her brief before the Court, plaintiff argues that the Commissioner's findings are in error as follows:

1. The ALJ erred in relying on the VE's testimony when that testimony was contrary to the DOT and no reasonable basis was obtained to explain the conflict.

2. In his findings as to residual functional capacity, the ALJ failed to include limitations from acknowledged severe impairments and further failed to offer any explanation of how these severe impairments were considered.

>   3. The reasons given by the ALJ for rejecting the opinion of the consulting psychologist are not supported by substantial evidence of record.
>
>   4. The Appeals Council erred in failing to set forth its rationale regarding the additional evidence presented to it.

The Commissioner contends otherwise and urges that substantial evidence supports the determination that plaintiff was not disabled. In her decision, the ALJ made the following findings of fact and conclusions of law:

>   1. The claimant met the insured status requirements of the Social Security Act through June 30, 2007.
>
>   2. There is insufficient evidence to conclude that the claimant has engaged in substantial gainful activity since March 24, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).
>
>   3. The claimant has the following severe impairments: dysthymia, anxiety-related disorder, somatoform disorder, personality disorder, obesity, cervical and lumbar degenerative disc disease, degenerative joint disease, and osteoarthritis  (20 CFR 404.1520(c) and 416.920(c)).
>
>   4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 416.920(d) 416.925 and 416.926).
>
>   5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform less than a full range of sedentary work. Specifically, the claimant's ability to engage in sedentary work is limited by an inability to perform work requiring the performance of more than simple tasks. In addition, the claimant must be allowed to vary tasks and should not be required to stand in one place.
>
>   6. Based on credited testimony elicited from the vocational expert during the hearing, I find that the claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
>   7. The claimant was born on January 27, 1964 and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 CFR 404.1563 and 416.963).

> 8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).
>
> 9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled ( 20 CFR Part 404.1568 and 416.968).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from March 24, 2004 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 17-25).

Under the Social Security Act (the Act), 42 U.S.C. § 405(g), this Court's scope of review of the Commissioner's final decision is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether he applied the correct law. Richardson v. Perales, 402 U.S. 389 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). "Substantial evidence" is that evidence which "'a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. at 401 (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's narrow scope of review does not encompass a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405(g); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. See 20 C.F.R.

§§ 404.1520, 416.920. An ALJ must consider whether: (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the claimant has an impairment which equals a condition contained in the Act's listing of impairments (codified at 20 C.F.R. part 404, subpart P, appendix 1); (4) the claimant has an impairment which prevents past relevant work; and (5) the claimant's impairments prevent him from any substantial gainful employment. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and if proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

Under 42 U.S.C. § 423(d)(5), the plaintiff has the burden of proving disability, which is defined by §§ 423(d)(1)(A) and 1382c(a)(3)(A) as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See also 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

### IV. ARGUMENTS

#### A.  VE Testimony

Plaintiff argues that the ALJ committed reversible error when she failed to ask the VE whether his testimony was consistent with the DOT and failed to obtain a reasonable explanation for the conflict and explain how it was resolved. Plaintiff argues that the VE admitted that the DOT does not identify any sedentary packer or electrical assembler jobs. However, plaintiff states that the ALJ "alludes to the conflict in her decision" but does not comply with the Rule. As to the packer job,

5

plaintiff argues that the DOT lists all the packer jobs of which none are described as either sedentary or basic. Plaintiff asserts the VE testified that even though the electrical assembler job title in the DOT is classified as light, she was providing numbers for that job performed at a sedentary level but that the ALJ did not identify and obtain a reasonable explanation for the conflict or how it was resolved in violation of SSR 00-4p. Furthermore, plaintiff argues that the job of electrical assembler (DOT 729.384-026) has an SVP of 3 which is considered to be semi-skilled. Therefore, the job is neither unskilled nor simple as required by the RFC given in the ALJ's hypothetical. Additionally, as to the proffered job of surveillance system monitor by the VE, plaintiff asserts the job is not restricted to simple tasks but requires a reasoning level of "3".

At step five of the sequential evaluation, the Commissioner bears the burden of providing evidence of a significant number of jobs in the national economy that a claimant could perform. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner relies primarily on the DOT for information about the requirements of work in the national economy, but may also use VEs at step five "to resolve complex vocational issues." Social Security Ruling (SSR) 00-4p, 65 Fed. Reg. 75,759-01, 75,760 (Dec. 4, 2000). SSR 00-4p sets out the ALJ's duty to ask the VE to identify and explain any conflicts with the DOT and provides as follows, in relevant part:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency. Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis

>for relying on the VE or VS testimony rather than on the DOT information.

SSR 00-4p. The ALJ is to obtain a reasonable explanation for any "apparent unresolved conflict" between the VE evidence and the DOT before relying on the VE to support a determination about whether the claimant can perform work. *Id.* A VE's testimony that conflicts with the DOT may be used only if the ALJ finds that it is based on "other reliable publications" or the VE's "experience in job placement or career counseling." SSR 00-4p; see also Fisher v. Barnhart, 181 Fed. App'x 359, 365-66 (4th Cir. 2006) (unpublished).

A review of the hearing transcript reveals that the VE testified based on the ALJ's hypothetical that there would be work in packaging and packers at the sedentary level and gave the number of jobs in South Carolina and nationally at the sedentary level of these jobs even though they were listed in the DOT as medium and unskilled. (Tr. 68-69). The VE testified that the DOT listing for work such as electrical and electronics assembly is light and unskilled but gave the numbers for sedentary level. The ALJ asked the VE that when she was "talking about jobs where the DOT says they're light or, or medium the basis, your understanding of the availability of these jobs are based on your expertise, correct?"[1] (Tr. 69). The VE responded in the affirmative.[2] Therefore, in the decision, the ALJ stated the following:

>. . . The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative

---

[1] Reasonable explanation" may be based on, inter alia, "other reliable publications" or the VE's own "experience in job placement or career counseling." Id.; see also Fisher, 181 F. App'x at 365.

[2] It is noted that plaintiff's attorney cross-examined the VE but did not inquire as to the conflicts as set forth by the VE. (Tr. 70-73).

> sedentary exertion jobs requiring only unskilled tasks: packer (in South Carolina 206/13,369 jobs in the U.S.), surveillance system monitor (500 locally and 40,000 nationally); electrical assembly (56/3, 659); or cashier (1,623/101,287).
>
> The vocational expert testified that the packer job is defined in the Dictionary of Occupational Titles as requiring medium exertion, but that her personal knowledge of the job is that while there is only one DOT code for packer, the job is actually performed at all ranges of exertion, and the numbers given reflect sedentary packer jobs. Similarly, the job of electrical assembler is defined as "light" in the DOT, but is actually performed at the sedentary level in the vocational expert's experience. Otherwise, her testimony is consistent with the Dictionary of Occupational Title.

(Tr. 25).

The undersigned concludes that while the ALJ may not have expressly asked the VE if there was a conflict, the VE explained the conflict when responding to the hypothetical. Furthermore, the ALJ specifically asked the VE if her naming the numbers for sedentary jobs within the categories was based on her expertise. Therefore, obviously a conflict was contemplated and any technical failure to comply with SSR 00-4p amounts to harmless error because the VE testified to how the jobs were described in the DOT but gave the numbers for how the jobs could be performed at the sedentary level based on her expertise. Further, the ALJ stated in his decision that even though the packer job is defined in the DOT as requiring medium exertion, based on the VE's personal knowledge of the job, the job is actually performed at all ranges of exertion and gave the numbers that reflect sedentary packer jobs. Further, the ALJ found that even though the DOT lists the job of electrical assembler as light in the DOT, it is actually performed at the sedentary level in the VE's experience.[3]

---

[3] Additionally, the VE testified that the job of surveillance system monitor is listed in the DOT as sedentary and unskilled which the ALJ found consistent with the DOT. See SSR 00-4p, at *3 (stating that unskilled work corresponds with a Specific Vocational Preparation ("SVP") Level of 1 or 2).

**RFC**

Plaintiff further argues that in the ALJ's findings as to residual functional capacity ("RFC"), the ALJ failed to include limitations from acknowledged severe impairments and failed to offer any explanation of how these severe impairments were considered. Therefore, plaintiff argues the ALJ cannot rely on the VE's response to a hypothetical question if the RFC does not incorporate all relevant medical conditions.

The Commissioner countered asserting the ALJ properly accounted for plaintiff's impairments in finding she was limited to sedentary work, with simple tasks, and the need to change positions.

Plaintiff's argument that the ALJ did not consider her mental impairments in the ALJ's RFC fails. In her decision, the ALJ found plaintiff's mental impairments do not meet or medically equal the criteria of listing 12.04, 12.06, 12.07, or 12.08. The ALJ found that "because the claimant's mental impairment does not cause at least two 'marked' limitations or one 'marked' limitations and 'repeated' episodes of decompensation, the 'paragraph B' criteria are not satisfied and that the evidence fails to establish the presence of the 'paragraph C' criteria." (Tr. 22). Additionally, after considering plaintiff's mental impairments, the ALJ limited plaintiff to "simple tasks, only because of her combination of mental impairments–some depression and anxiety– would leave her unreliable for carrying out detailed tasks." (Tr. 24). Therefore, the ALJ did consider and provide an explanation of how she considered plaintiff's mental impairments.

Further, plaintiff asserts that the ALJ did not set forth any explanation of how she considered plaintiff's obesity when setting forth plaintiff's RFC. The Commissioner counters that the ALJ explicitly considered her obesity, and the plaintiff does not point to any specific limitations or exacerbations caused by her obesity not already included in the residual functional capacity finding by the ALJ.

The listing for obesity was eliminated in 1999 but Social Security issued Ruling 00-3p on the evaluation of obesity. The Ruling states that obesity must be considered in determining disability and Residual Functional Capacity. The Ruling states that a person may be found to equal the Listings due to obesity if it markedly limits the claimant's ability to walk and stand.

In plaintiff's case, the ALJ found obesity as one of plaintiff's severe impairments. Moreover, the ALJ noted in the decision that, " John Duncan, M.D., performed a consultative physical evaluation in January 2004. . . She was obese, at 63 inches tall and 238 pounds. Physical exam was normal."  (Tr. 20). The ALJ further noted that "In May 2007, the claimant continued to complain of back and leg pain, and her physician noted that she had pain, numbness, and swelling in her legs as a result of her morbid obesity. . . At a complete physical in January 2008, the claimant had fairly good range of body movement, but still complained of leg pain; she was told that her obesity was the cause and was urged to exercise and limit caloric intake. . ." (Tr. 21).  The ALJ further concluded that, "The claimant's allegations regarding her specific limitations are simply not supported by the objective medical evidence contained in the record, which shows fairly benign objective findings, other than obesity that has been present while the claimant was still working and has not increased significantly over the years . . . " (Tr. 23). Therefore, contrary to plaintiff's argument, the ALJ found her obesity to be a severe impairment, discussed her allegations of leg pain with regard to her obesity,

and limited her RFC to be "allowed to vary tasks and should not be required to stand in one place." (Tr. 23).

Thus, the undersigned finds that there is substantial evidence to support the ALJ's decision in that the ALJ considered plaintiff's obesity, gave his reasons, and presented limitations in her RFC.[4]

**Opinion of consulting psychologist**

Plaintiff argues the reasons proffered by the ALJ for rejecting the opinion of the consulting psychologist, Dr. C. David Tollison, are not supported by the substantial evidence of record. Specifically, plaintiff argues there is no support in the record for the ALJ's reasoning that Dr. Tollison relied on plaintiff's subjective complaints, that Dr. Tollison only examined plaintiff one time, and that plaintiff's statement to Dr. Tollison are inconsistent with her statements to her medical providers and her hearing testimony.

Defendant responds that there is substantial evidence to support the ALJ's decision to limit the weight given to Dr. Tollison's opinion, including it was a one time examination, was not consistent with the record evidence and much of his opinion was based on plaintiff's subjective complaints rather than objective medical findings. Defendant asserts Dr. Tollison gave an opinion on plaintiff's physical limitations, including the need for rest breaks based on fatigue, when his area of expertise was in psychology. (Def.'s memorandum, p. 19). Additionally, defendant contends the

---

[4] Additionally, Dr. Kincheloe conducted a consultative examination noting she complained of knee pain for which he ordered an MRI. Dr. Kincheloe concluded her gait was normal. She had normal range of lumbar motion, bending over and laterally, there was no muscle spasm, and no sciatic notch tenderness. Her reflexes and sensation were normal and muscle testing in her lower extremities was normal. Dr. Kincheloe concluded plaintiff could perform sedentary work with some limitations.

record does not support the extreme limitations given by Dr. Tollison because his own examination showed plaintiff was alert and responsive, fully oriented with intact and coherent thought processes, polite and cooperative. (Id. at 20).

Although the regulations require that all medical opinions in a case be considered, 20 C.F.R. § 404.1527(b), treating physician opinions are accorded special status, see id. § 404.1527(d)(2). "Courts typically 'accord greater weight to the testimony of a treating physician because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant.'" Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006) (quoting Johnson, 434 F.3d at 654) (internal citation omitted). The rule, however, does not mandate that her opinion be given controlling weight. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam). "It is error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." SSR 96-2p, 61 Fed. Reg. 34,490-01, 34,491 (July 2, 1996); see also 20 C.F.R. § 404.1527. Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996); see also Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) ("Under such circumstances, the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence.").

The ALJ's decision with respect to Dr. Tollison's opinion provides as follows:

The claimant had been evaluated by psychologist C. David Tollison, Ph. D., on December 27, 2007. She related to him that she had last worked regularly in 2003, having been terminated from her job for excessive absence due to her pain and medical problems. She stated that after that, she had help[ed] a few people clean their

homes a few hours per week here and there but reports that she has not done any of that type of work in over a year." She reported pain in her arms, back and legs, and anxiety that was uncontrolled. She said that "my nerves are taking over my body and life." She stated she was unable to sleep because of her nerves had crying spells twice a week, and had gained 50 pounds in the past two or three years because she ate to deal with stress. She stated she currently weighed 261 pounds. She used a cane to walk and exhibited a "very slow, guarded and antalgic gait." Her affect was blunted and her "facial expression is void of range and spontaneity," although she was cooperative. She gave an MMPI reflecting intense focus on physical symptoms considered particularly severe and disabling, and elevations in anxiety and depression. The claimant stated she never went on dates, did not visit others, and spent her time at home, living a simple life and watching television with her daughter. She stated that her daughter did not work either, because she had to spend all her time caring for the claimant. She stated her daughter had to do everything for the family–cooking, cleaning, shopping, laundry, errand running, etc. Dr. Tollsion concluded that the claimant suffered dysthymia, anxiety, a somatoform disorder, and a personality disorder with dependent features, and assigned a Global Assessment of Functioning at 45 to 50 (reflecting moderate to significant difficulties in at least one area of function). Dr. Tollison relied on claimant's subjective complaint made during a single encounter where she was focused on those complaints, and I don't find the results generally applicable from 2004 forward. Moreover, the claimant's statement to him are inconsistent with her concerns and symptoms as voiced to her provider and with her testimony at the hearing.

The claimant underwent x-rays in December 2007 that showed only "scattered degenerative disc disease" and no acute processes, with some mild disc narrowing.

At the hearing, the claimant stated she had not earned any money since 2005. She stated she had been separated from her husband for three years, and could not afford a divorce; she stated that her daughter was out of work, but had been looking for a job for a year. Her mother lived in a trailer behind hers, and allowed the claimant to use her car. I noted that this testimony is substantially dissimilar to what the claimant told Dr. Tollison.

(Tr. 21-22).

The ALJ further concluded as follows:

I base my finding of residual functional capacity primarily on the opinion from Dr. Kincheloe, who not only was a consulting physician, but the claimant's treating physician. I find it highly significant that when the claimant went to a physician who knew her, and her medical history, she walked normally and moved normally; when she went to providers who did not know her, she exhibited dramatic physical limitation. More recently, when seeing her treating physicians at the Center for

> Family Medicine, the claimant has again exhibited normal physical exams, and her physicians consider her anxiety under good control.
>
> I limited the claimant to simple tasks, only because of her combination of mental impairments–some depression and anxiety–would leave her unreliable for carrying out detailed tasks.
>
> I note that the State Agency concluded the claimant can perform medium work, but I assign more weight to Dr. Kincheloe's opinion. The State Agency also concluded the claimant's mental impairments are non-severe and assigned no mental limitations, but I conclude that the minimal limitations I have given are appropriate.

(Tr. 24).

The ALJ discussed in detail the opinion of consulting psychologist Dr. Tollison and opinion of the treating physician, Dr. Kincheloe, who found plaintiff could perform sedentary work. The ALJ explained what weight he gave to Dr. Tollison's opinion and his reasoning. The ALJ's assessment shows that he evaluated the doctor's opinion in accordance with the regulation and, thus, his determination is supported by substantial evidence. Hence, the ALJ did not err as alleged by plaintiff.

**Evidence submitted to Appeals Council**

Lastly, plaintiff asserts the case should be remanded because the Appeals Council did not set forth its rationale regarding the additional evidence presented it. Plaintiff asserts she submitted approximately ninety pages of new evidence to the Appeals Council consisting of school records, medical records for the Center Family Medicine and medical records from Wallace Thompson Hospital.

Defendant counters that the evidence submitted to the Appeals Council was properly considered. Defendant first asserts that at the hearing, the ALJ explicitly asked plaintiff's counsel if he wanted the record left open for any additional evidence. Plaintiff's counsel stated that all pertinent

evidence had been submitted. The evidence submitted to the Appeals Council was submitted almost one year later, in April 2009, and consisted of miscellaneous medical treatment notes, most of which post-dated the ALJ's September 2008 decision. Defendant further asserts that other than a couple of treatment notes and school records, the majority of the additional evidence post-dates the ALJ's decision without any indication that the later treatment notes relate to plaintiff's conditions as they existed prior to the ALJ's decision. Moreover, defendant contends that the routine treatment notes pre-dating the ALJ's decision do not differ significantly from the medical records before the ALJ at the time of her decision so that there would be little reason to think said treatment notes would have changed the outcome of the case.

There is a split among South Carolina district courts as to whether the Appeals Council must make an assessment of additional evidence in its decision to deny review. See Jackson v. Barnhart, 368 F.Supp.2d 504, 508 n. 2 (D.S.C.2005) ("[T]here is no requirement that the Appeals Council articulate its own assessment of the additional evidence in its decision to deny review ." (internal quotation marks omitted)); *but see* Harmon v. Apfel, 103 F.Supp.2d 869, 873 (D.S.C.2000) ("[T]he Appeals Council must articulate its reason for rejecting new, additional evidence, so that a reviewing court may understand the weight the Commissioner attributed to the new evidence."). Regardless, the additional evidence must be new, material and relate to the period on or before the date of the ALJ's decision.

First, it is noted that plaintiff does not set forth how the additional evidence is material or how it relates to the period prior to the ALJ's decision. In plaintiff's reply to the defendant's brief that the additional evidence is neither new, material or relates to the period on or before the date of the ALJ's decision, plaintiff presents no specific argument other than to recite the cases of Hollar v.

15

Commissioner, 194 F.3rd 1304 (4th Cir. N.C. 1999) and Harmon v. Apfel, 103 F. Supp. 869 (D.S.C. 2000).

The undersigned reviewed the evidence submitted to the Appeals Council, and it appears the evidence relied upon by the ALJ has not been contradicted by a new and material medical opinion or evidence. Therefore, the undersigned can find no basis in the Appeals Council's treatment of this new evidence for a reversal of the decision.

## V. CONCLUSION

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. Richardson, 402 U.S. at 390. Even where the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. Blalock, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, 739 F.2d at 989. As previously discussed, despite the plaintiff's claims, she has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, this Court recommends that the Commissioner's decision be AFFIRMED.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

January 21, 2011
Florence, South Carolina